UNITED STATES DISTRICT COURT
DISTRICT OF UTAH

| | |
|---|---|
| KRISTOPHER KRAMER, ROBIN KINDT, ROBERT FORD, REO FORD, and TEESHA LEE FORD,<br><br>Plaintiffs,<br><br>v.<br><br>METROPOLITAN LIFE INSURANCE COMPANY,<br><br>Defendant. | MEMORANDUM DECISION & ORDER GRANTING PLAINTIFFS' MOTION FOR LEAVE TO CONDUCT LIMITED DISCOVERY IN PART<br><br>Case No. 2:25-cv-00327<br><br>District Court Judge Howard C. Nielson<br><br>Magistrate Judge Dustin B. Pead |

## INTRODUCTION

Plaintiffs Kristopher Kramer, Robin Kindt, Robert Ford, Reo Ford and Teesha Lee Ford (collectively, "Plaintiffs") motion the court to conduct limited discovery regarding Defendant Metropolitan Life Insurance Company's ("Defendant" or "MetLife") dual role as both the plan administer and the payor of benefits on Plaintiffs' claims.[1] MetLife objects to any additional discovery, arguing Plaintiffs fail to meet their burden of identifying specific reasons as to why additional discovery is necessary.[2] Upon review and for the reasons now stated herein, the court GRANTS Plaintiffs' Motion IN PART.[3]

---

[1] ECF No. 20, Plaintiffs' Motion for Leave to Conduct Limited Discovery ("Motion").

[2] ECF No. 29 at 2, Defendant's Motion for Leave to Conduct Limited Discovery.

[3] ECF No. 20.

1

## BACKGROUND

Decedent was an employee at Wells Fargo Bank who participated in the bank's employee welfare benefits program.[4] The program included life insurance and accidental death and dismemberment ("AD&D") benefits ("Plan").[5] Decedent passed away on February 4, 2021, due to "[d]rug intoxication; oxycodone, venlafaxine, amphetamine, etizolam and mitragynine".[6]

Under decedent's Plan, MetLife paid out basic life insurance benefits.[7] Thereafter, Plaintiffs submitted two additional claims: a $600,000 AD&D benefit ("First Claim"); and a $75,000 AD&D benefit ("Second Claim").[8] After review, MetLife denied both claims based on the Plan's language excluding coverage for the "voluntary intake or use by any means of . . . any drug, medication or sedative, unless it is: taken or used as prescribed by a Physician . . . ."[9] MetLife concluded decedent did not have a valid prescription for oxycodone and therefore decedent's "death was caused/contributed to by a drug that was not taken as prescribed."[10]

Plaintiffs' appealed MetLife's denial of claims and submitted evidence of decedent's past oxycodone prescriptions issued in 2018 and 2019.[11] In response, MetLife retained independent

---

[4] 29 U.S.C. § 1132(d)(1) (defining employee benefit plan).

[5] ECF No. 1 at ¶ 9, Complaint; ECF No. 29-1, Exhibit A, MetLife Certificate of Insurance.

[6] ECF No. 29-2, Exhibit B, Certificate of Death.

[7] ECF No. 29-3, Exhibit C, Claim Summary.

[8] *Id.*

[9] ECF No. 29-1, Exhibit A at 43-44, AR_000112-AR-000113, Accidental Death and Dismemberment Exclusions.

[10] ECF No. 29-4, Exhibit D at 1-12, AR_000364-AR_000381, November 5, 2021 denial of benefits letters.

[11] ECF No. 29-5, Exhibit E, Discharge Summary.

2

physician reviewer, Dr. Michael A. Darracq ("Dr. Darracq"), to conduct an outside medical review.[12] Dr. Darracq determined decedent's oxycodone prescriptions were not current and, for the first time, asserted that the drug venlafaxine was present at toxic levels exceeding decedent's prescription dosage.[13] Based on the conclusions set forth in Dr. Darracq's independent review, MetLife upheld its denial of Plaintiffs' First and Second Claims.[14]

In February 2024, Plaintiffs asked MetLife to reconsider their claims and provided their own toxicology consultant report from Dr. Patricia Williams ("Dr. Williams").[15] In her report, Dr. Williams refuted the assertion that decedent was taking venlafaxine or oxycodone in a manner not prescribed by a physician.[16] Dr. Williams further explained that decedent had been prescribed oxycodone "as needed" meaning that decedent's prescription was valid over an extended period of time.[17] After receiving the report from Dr. Williams, MetLife denied Plaintiffs' appeal of the Second Claim and refused to reconsider its denial of an appeal for Plaintiffs' First Claim.[18]

Plaintiffs filed their pending action against MetLife on April 25, 2025.[19] On September 15, 2025, Plaintiffs moved to conduct limited discovery related to MetLife's inherent conflict of

---

[12] ECF No. 29-6, Exhibit F, Dr. Michael A. Darracq's Peer Review Report.

[13] *Id.*

[14] ECF No. 29-7, Exhibit G at 1-5, AR_000402-AR_000403, January 14, 2022, denial of benefits letters.

[15] ECF No. 30-1, Exhibit A, Dr. Patricia Williams Report.

[16] *Id.*

[17] *Id.*

[18] ECF No. 30 at 3.

[19] ECF No. 1.

3

interest based on its role as both the payor of decedent's benefits and as the entity determining Plaintiffs' entitlement to those benefits.[20]

## LEGAL STANDARD

The Employment Retirement Income Security Act ("ERISA") allows an individual, who is denied benefits under an employee benefits plan, to challenge that denial in federal court.[21] Generally, judicial review of an ERISA claim is "limited to the administrative record—the materials compiled by the administrator in the course of making his [or her] decision."[22] In certain cases, however, "the entity that administers the plan, such as an employer or an insurance company, [not only] determines whether an employee is eligible for benefits[, but also] pays benefits out of its own pocket."[23] In these "dual role conflict" cases, courts may permit discovery outside the administrative record so as to determine the "scope and impact" of the conflict.[24] The

---

[20] ECF No. 20.

[21] 29 U.S.C. § 1001 *et seq*.

[22] *Holcomb v. UNUM Life Insurance Company of America,* 578 F.3d 1187, 1192 (10th Cir. 2009) (quoting *Fought v. UNUM Life Insurance Company of America,* 379 F. 3d 997, 1003 (10th Cir. 2004)).

[23] *Metro Life Insurance Company v. Glenn,* 554 U.S. 105, 108, 128 S. Ct. 2343, 171 L. Ed. 2d 299 (2008).

[24] *Murphy v. Deloitte & Touche Group Insurance Plan,* 619 F.3d 1151, 1162 (10th Cir. 2010); *see also Glenn*, 554 U.S. at 105; *Paul v. Hartford Life and Accident Insurance Company,* 2008 U.S. Dist. LEXIS 59986, at *7 (D. Colo. July 28, 2008) ("while it would not be proper to allow Plaintiff to conduct discovery related to the factual merits of his claim, this Court will permit limited discovery related to the alleged conflict of interest in this case and to the policies and procedures used by [the administrator] to make its decision.").

party "moving to supplement the record or engage in extra-record discovery bears the burden of showing [the extra-record discovery's] propriety."[25]

District Court's have substantial discretion in handling discovery requests under Federal Rule of Civil Procedure 26(b).[26] In determining whether dual conflict discovery is appropriate the court must consider the "familiar standards" of Federal Rule of Civil Procedure 26.[27] By doing so, the court ensures that the requested discovery comports with ERISA's focus on prompt claims' resolution, while balancing the cost and burden of the discovery in light of its asserted necessity.[28]

## ANALYSIS

With the above stated legal principles in mind, the court finds Plaintiffs' request for limited, extra-record discovery in this action is appropriate. Conflicting medical reports and the inability to challenge newly raised medical claims creates ambiguity. While the mere existence of a dual role conflict does not in and of itself function as "a green light" for discovery,[29] Plaintiffs have identified specific issues regarding Defendant's policies, procedures and

---

[25] *Gunderson v. Metropolitan Life Insurance,* 2011 U.S. Dist. LEXIS 12394, at *10 (D. Utah 2011) (citing *Murphy* at 1163).

[26] *Murphy* at 1164 (citing *Motley v. Marathon Oil Co.,* 71 F.3d 1547, 1550 (10th Cir. 1995)).

[27] *Gunderson* at *4 (citing *Murphy* at 1162) ("[W]e must apply Federal Rule of Civil Procedure 26(b) to discover requests seeking information related to a dual role conflict of interest, just as we would apply that rule to other discovery requests."); Fed. R. Civ. P. 26(b)(1) ("Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case . . . .").

[28] *Murphy* at 1163.

[29] *Harper v. Aetna Life Ins. Co.,* 2019 U.S. Dist. LEXIS 145685, at *9 (N.D. Okla. Aug. 26, 2019).

interpretations which support the propriety of limited discovery to understand the effect, if any, Defendant's dual role may have played in its decision to deny Plaintiffs' claims.[30]

A detailed review of Plaintiffs' First Set of Interrogatories and Requests for Production reveals, however, that not all of the information requested by Plaintiffs falls within the scope of Federal Rule 26.[31] Accordingly, the court circumscribes Plaintiffs' extra-record discovery requests as follows:

Interrogatory 1 and Request for Production 1 seek information about the individuals answering the discovery and the documents relied on.[32] These discovery requests are foundational and allowed.

Interrogatory 2 and Interrogatory 4 seek specific information about the individuals responsible for the decision to deny benefits "in this case".[33] The requests provide foundation, go

---

[30] *Murphy* at 1164 (allowing extra record discovery to determine "the seriousness of the inherent conflict and the likelihood that it jeopardized MetLife's decisionmaking process" in denying Plaintiffs' claims.).

[31] ECF No. 20-1, Plaintiffs' First Set of Interrogatories and Request for Production; Fed. R. Civ. P. 26.

[32] *Id.* at 4, 6. Interrogatory 1 states "[i]dentify each person making and assisting you with your Interrogatory responses, including each person's name, age, address, occupation, current title, and relationship to MetLife." Request for Production 1 seeks production of "each and every document identified or relied on in preparing your responses to the Interrogatories."

[33] *Id.* at 4, 5. Interrogatory 2 requests identification of "the specific person, or if a committee, the names of committee members, who was or were responsible for the decision to deny benefits to the Plaintiffs under the Plan in this case at each level at which the case was considered or appealed. For each person, provide his or his [sic] title, length of employe with [you] and professional qualifications." Interrogatory 4 asks: "[p]lease state the names of each and every person who provided any medical analysis, evaluation, consultation, opinion, or advice at the behest of MetLife, related in any manner to the Plaintiffs' claims in this case. In answering this Interrogatory, please include the following information: (a) [t]he individual's employer; (b) [j]ob title; (c) [l]ength of employment with MetLife or

to claims' administration bias and are narrowly tailored to this action. As a result, any burden imposed on Defendant in producing this information should be minimal. Relatedly, Interrogatory 7 seeks the resume or curriculum vitae of individuals who rendered a position on Plaintiffs' entitlement to benefits as well as "any other individual involved in the administration of these claims."[34] While the court finds relevance in providing such information related to individuals who issued an opinion on Plaintiffs' entitlement to benefits, it does not find relevance or proportionality when extended to encompass "*any* other individual involved". As a result, Interrogatories 2 and 4 are permitted. Interrogatory 7 is also allowed in part, but as limited above to only those individuals "who were asked to render a position" on Plaintiffs' entitlement to benefits.

      Interrogatory 3 seeks information about compensation and bonuses for the individuals who made the decision to deny Plaintiffs' claims.[35] Further, if there were bonuses were paid in relation to Plaintiffs' claims, Interrogatory 10 requests information on the basis for which the

---

any of its related entities; and (d) [f]or the time period since the person was first employed, the rate of pay, bonuses paid, awards or other indices of recognition for job performance, if such a person was paid under any status other than that of an employee, please fully explain how such individual was paid."

[34] Request for Production 7 seeks "[t]he resume or curriculum vitae of the for the [sic] individuals who were asked to render a position on whether Plaintiffs are entitled to benefits under the subject policy or any other individual involved in the administration of these claims, such as claims personnel."

[35] *Id.* at 4. Interrogatory 3 requests: "For each individual identified in response to Interrogatory No. 2, identify the rate of pay, bonuses paid, awards or other indices of recognition for job performance for the entire time period since the person was first employed by MetLife for all employees that were involved in the decision to terminate Plaintiffs' AD&D benefits."

7

bonuses are awarded and Request for Production 9 pursues supporting documentation.[36] These requests seek information related to any possible financial motive for MetLife to deny claims in its dual role capacity. Thus, Interrogatories 3 and 10 and Request for Production 9 are relevant and allowed.

Interrogatory 8 and Requests for Production 2, 3, 4 and 5 generally ask for copies of claim handling guidelines, training materials, policies, procedures and protocols relating to, among other things, AD&D claims, the use of peer review reports and application of the same exclusion as relied upon in Plaintiffs' case.[37] This information is relevant to understanding

---

[36] *Id.* at 6. Interrogatory 10 asks: "If bonuses are paid to the Defendant's employees involved in Plaintiffs' claims, please explain the basis upon which bonuses are awarded." Request for Production 9 requests production of: "Documents reflecting the rate of pay, bonuses paid, awards or other indices of recognition for job performance for any MetLife employees or independent contractors involved in Plaintiffs' claims."

[37] *Id.* at 6-7. Interrogatory 8 seeks identification of "any and all internal guidelines, policies, procedures, claims handling manuals and memorandum in existence during the time this claim was considered, either on initial application or on further appeal(s), concerning the interpretation and/or administration of the policy issued in this case that are not contained in the record provided to the Plaintiffs' counsel." Request for Production 2 seeks copies of MetLife's "written claims manuals or handbook, including but not limited to any formal, written policies, procedures, protocols, or guidelines instructing claims personal on how to proceed in making a benefits determination or otherwise advising claims personnel regarding the decision making process for AD&D claims." Request for Production 3 requests "[c]opies of all instructional and/or training documents available to MetLife's claims personnel from 2015 through the present." Request for Production 4 requests that Defendant provide copies of its "formal, written policies, protocols, procedures, or guidelines instructing claims personal on the use of peer review reports in the context of AD&D claims." Request for Production 5 asks for copies of MetLife's "formal, written policies, protocols, procedures, or guidelines for administering a claim for AD&D benefits involving the same exclusion that MetLife has asserted in this case."

MetLife's guidelines and understanding what procedures are in place to minimize any potential bias. Consequently, these discovery requests are appropriate and allowed.

Request for Production 8 seeks performance evaluations of MetLife's claims personnel "involved in Plaintiffs' claims" and is relevant to the dual role conflict issue and narrowly tailored to the needs of this case.[38] However, while Interrogatory 9 and Requests for Production 6, 10, 11 and 12 may yield information about bias, they are denied as overbroad, disproportionate and outside the scope of Rule 26.[39] For example, Request for Production 7 seeks hiring, firing and compensation information as to all MetLife employees. Similarly, Request for Production 10 broadly requests *any* reports or investigations from *any* Insurance Commissioner or regulatory authority.[40] Likewise, Requests for Production 11 and 12 are overbroad seeking, for the past ten years, all complaints against Defendant, as well as general statistical data, spreadsheets and calculations.[41] These requests are so broad and inclusive that

---

[38] Request for Production 8 seeks "[a] copy of the monthly, interim, and annual performance evaluations for the years 2015 to present for the MetLife employees and or other individuals who were involved in Plaintiffs' claims, including without limitation claims personnel and medical reviewers."

[39] Fed. R. Civ. P. 26(b)(1).

[40] Request for Production 10 asks for "[a]ll documents relating to any reports or investigations of YOUR claims handling practices by any Insurance Commissioner or regulatory authority within the last then (10) years."

[41] Request for Production 11 requests "[f]or the past ten years, each document identifying each complaint filed against Defendant with an administrative agency (including but not limited to a state insurance regulator) by an insured that was denied AD&D benefits." Request for Production 12 seeks "[e]ach financial reports, reports of profitability, reports of reserves, or any other reports that show the financial impact of group AD&D claims that are allowed, terminated, closed, paid, reserves set aside for new claims, reserves set aside for new appeals, or any other financial reports, statistics, spreadsheets, or

the burden of obtaining such information outweighs any benefit obtained therefrom. Finally, Interrogatory 9 requests the number of times MetLife has retained MES Peer Review Services, but does so without any temporal limitations.[42]

Interrogatory 5, Interrogatory 6 and Interrogatory 7 relate to the reviewing physician on Plaintiffs' case and the amount of time that physician, or the third-party company by whom the physician is employed, have been retained to conduct a review and for what financial benefit.[43] The Interrogatories are limited to the physicians relied on in denying Plaintiffs' claims and are relevant to MetLife's ongoing relationship with those specific individuals or companies.[44]

---

calculations that contain the above information for claims assigned to the primary claims handler managing Plaintiffs' claim for benefit under the AD&D policy."

[42] Interrogatory 9 seeks "the number of times MetLife has retained MES Peer Review Services in order to arrange an Independent Medical Evaluation (IME), peer review, or other medical review of individuals claiming Accidental Death and Dismemberment benefits from MetLife."

[43] Interrogatory 5 asks "[s]tate the number of times in the past ten years any of the reviewing physicians MetLife relied on in denying these claims have conducted an Independent Medical Evaluation (IME), peer review, or other medical review of individuals claiming accidental death and dismemberment ("AD&D") benefits from MetLife." Interrogatory 6 states: "[f]or each of the years from 2015 to the present, provide the total number of reviews performed per year by the medical professionals who were involved in this claim and the gross monetary compensation paid to such medical professions (or paid by MetLife through an intermediary company, such as University Disability Consortium, MES Solutions, RRS, PDA, Medical Consultant Network, etc.) for those reviews." Interrogatory 7 requests "[f]or each of the years from 2015 to the present, provide the total number of reviews performed per year by MES Peer Review Solutions and the gross monetary compensation paid to such company for those reviews."

[44] *See Benson v. Hartford Life & Accident Insurance Co.,* 2011 U.S. Dist. LEXIS 9808, at *33-34 (D. Utah Jan. 28, 2011).

Plaintiffs seek generalized information for which production should not be too onerous or burdensome. Accordingly, these Interrogatories are allowed.

## CONCLUSION

For these reasons stated and as specified above, the court finds Plaintiffs have met their burden and their Motion to conduct limited discovery is GRANTED IN PART as to Interrogatories 1, 2, 3, 4, 5, 6, 7,[45] 8 and 10 and Requests for Production 1, 2, 3, 4, 5, 7, 8, and 9 and DENIED IN PART as to Interrogatory 9 and Requests for Production 6, 10, 11 and 12.[46] Plaintiffs may proceed with the proposed discovery as modified by this order and the parties shall submit a proposed, stipulated discovery schedule to the court within fourteen (14) days from this date.

DATED this 13th day of November, 2025.

BY THE COURT:

_____
Dustin B. Pead
United States Magistrate Judge

---

[45] Interrogatory 7 is limited in part as set forth in the court's Ruling at 7.
[46] ECF No. 20.